UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------

DEMOND CAMPBELL,

                           Plaintiff,

  -against-

CORRECTIONAL OFFICER TREW,
CORRECTIONAL OFFICER MURPHY

                           Defendants.

18-CV-5507 (NSR)

OPINION & ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __7/30/2021__

NELSON S. ROMÁN, United States District Judge:

Plaintiff Demond Campbell ("Plaintiff") commenced this *pro se* action asserting claims pursuant to 42 U.S.C. § 1983 ("Section 1983") against Correctional Officer ("C.O.") Timothy Trew ("C.O. Trew")[1] and C.O. Patrick Murphy ("C.O. Murphy") (collectively, "Defendants"), who Plaintiff alleges sexually assaulted him. (Compl. (ECF No. 1.)) Presently before the Court is Defendants' motion for summary judgment. (ECF No. 75; *see* Defs' Mem. (ECF No. 80).) Plaintiff did not oppose the motion. (ECF No. 81.) For the following reasons, Defendants' motion for summary judgment is DENIED.

## BACKGROUND

The following facts are drawn from the Defendants' submissions in support of their motion for summary judgment and Plaintiff's Complaint and are undisputed except as indicated.

I.    **Facts**

In September 2017, Plaintiff was an inmate at Woodbourne Correctional Facility. (Pl. Dep. Tr. at 9:4-10 (ECF No. 79-2).) Defendants were employed by the New York State

---

[1] The Complaint misspells Defendant Trew's name as "Truw." For clarity, the Court will refer to this Defendant with the proper spelling "Trew" and directs the Clerk of Court to adjust the docket accordingly.

Department of Corrections and Community Supervision ("DOCCS") as C.O.'s assigned to Woodburne Correctional Facility. (C.O. Murphy Decl. at 1 (ECF No. 79-5); C.O. Trew Decl. at 1 (ECF No. 79-6).)

A.  *September 14, 2017: Cell Search*

On September 14, 2017, Plaintiff observed C.O. Murphy perform a routine search of his cell. (Plaintiff Dep. Tr. at 15:20-25, 16:2-13.) On September 20, 2017, roughly one week after the cell search, Plaintiff filed a grievance with DOCCS stating that C.O. Murphy, while conducting the cell search, damaged his property including his Quran, Walkman, radio, and headphones. (Pl. Dep. Tr. at 21:21-25, 22:2-9; Grievances and Appeal Packet at 2 (ECF No. 79-4).) Plaintiff testified that he was "upset" about his property being damaged. (Pl. Dep. Tr. at 51:3-9.) C.O. Murphy asserts, both in the cell frisk receipt and in a separate memorandum to the Sergeant dated September 29, 2017, that no property was damaged during the search of Plaintiff's cell on September 14, 2017. (C.O. Murphy Cell Frisk/Contraband Receipt (ECF No. 79-3); Grievances and Appeal Packet at 6.)

B.  *September 22/23, 2017: Alleged Sexual Assault*

   i.  *Plaintiff's Account*

Plaintiff testified that on September 22 or 23, 2017,[2] Defendants came to his cell and ordered him to go into the C.O. bathroom. (Pl. Dep. Tr. at 37:2-6.) When Plaintiff entered the C.O. bathroom, C.O. Murphy told him to place his hands on the wall. (*Id*. at 40:21-25, 41:11-16, 42:24-25, 43:2-5.) Plaintiff testified that after Plaintiff put his hands on the wall, "he grabbed my private parts," and when asked who "he" referred to, Plaintiff responded "Murphy. Not Murphy.

---

[2] The Complaint alleges that the sexual assault occurred on September 23, 2017. (ECF No. 1 at 4-5.) However, Plaintiff's medical records and letters to Governor Cuomo indicate that the alleged assault occurred on September 22, 2017. (ECF Nos. 79-8; 79-13; 79-12 at 2.)

2

Tr[e]w."³ (*Id*. at 43:7-9.) Plaintiff then clarified that "private parts" referred to his penis, and that he was fully clothed when C.O. Trew touched him there. (*Id*. at 44:4-15.) Plaintiff testified that C.O. Trew had his hands on Plaintiff's genitals for about one minute and that due to the pain C.O. Trew caused by squeezing his genitals, Plaintiff immediately fell to the ground. (*Id*. at 45:2-15.) Plaintiff further testified that while C.O. Trew was holding his genitals, he threatened Plaintiff that if he did not "sign off" on his grievance—meaning drop the grievance (*id*, at 48:4-10)—regarding C.O. Murphy's search of his cell—then he would "do it again." (*Id*. at 45: 15-20.) Plaintiff testified that, after C.O. Trew grabbed Plaintiff's genitals, C.O. Trew performed a pat frisk of Plaintiff during which he took Plaintiff's I.D. card and never returned it.⁴ (*Id*. at 54:20-25, 55:7-19.) Plaintiff testified that C.O. Murphy stood in the doorway of the C.O. bathroom and witnessed the entire incident. (*Id*. at 47:13-17.)

Plaintiff testified that after the alleged sexual assault, he sought medical care/treatment and filed a Prison Rape Elimination Act ("PREA") report with the medical staff the next day, after Sergeant DePaolo walked him to the infirmary.⁵ (*Id*. at 48:17-25, 49:2-9; Inmate Injury Report (ECF No. 79-8).)

---

³ The Complaint alleges that it was C.O. Trew, not C.O. Murphy, who entered the bathroom with Plaintiff and told him to place his hands on the wall. (Compl. at 4-5.)
⁴ At one point, Plaintiff testified that the pat frisk occurred *after* C.O. Trew grabbed his genitals. (Pl. Dep. Tr. at 54:14-15, 20-23.) At other points, Plaintiff testified that there was no pat frisk and that C.O. Trew only touched his genitals (*id*, at 43:23-25, 44:2-19), and that the pat frisk and touch occurred simultaneously (*id*. at 54:13-17).
⁵ The Complaint further alleges that Plaintiff reported the incident to Dr. Makram on September 24, 2017. (Compl. at 5.) Medical records dated September 28, 2017 indicate that Plaintiff told medical staff that his testicles were squeezed by a C.O and that he was examined by medical staff on September 28, 2017. (Inmate Injury Report; Ambulatory Health Records Progress Report (ECF No. 79-9).)

Plaintiff testified that as a result of the sexual assault, he suffered emotional, but not physical, pain, such that he could not sleep for about four months afterward, but stated that he did not seek any help or treatment. (Pl. Dep. Tr. at 60:2-14.)

ii. *Defendants' Account*

C.O. Murphy asserts that as a result of Plaintiff's grievance regarding the search C.O. Murphy performed on September 14, 2017, multiple superior officers questioned him about the cell search. (C.O. Muprhy Decl. at 3, 5.) Because he was being questioned by his superiors, C.O. Murphy asked C.O. Trew, "who was a regular officer on…[Plaintiff's] block," if he could speak with Plaintiff about the facility's cell frisk procedure and explain to Plaintiff why his cell was searched. (*Id*.) As such, Defendants went to Plaintiff's cell on September 22, 2017, and asked, but did not order or force, Plaintiff to step into the supply closet so C.O. Trew could have a private, confidential conversation with him regarding the search. (*Id*. at 4; C.O. Trew Decl. at 4.) Defendants state that they both remained in the hallway during the conversation for safety reasons—so that the C.O. desk/post would not be unmanned. (C.O. Murphy Decl. at 4; C.O. Trew Decl. at 5.) Defendants repeatedly assert that at no point during this conversation was Plaintiff told to place his hands on the wall, nor was Plaintiff touched, pat frisked, or threatened in any way whatsoever. (C.O. Muprhy Decl. at 5; C.O. Trew Decl. at 6.) Defendants further assert that the September 22, 2017 interaction with Plaintiff was "brief," "entirely verbal," and "did not involve any physical interaction." (C.O. Trew Decl. at 4.) As such, Defendants assert that Plaintiff's PREA allegations regarding the alleged sexual assault on September 22, 2017, are false and that neither the assault nor any pat frisk occurred on that date. (*Id*. at 7.)

C. *September 28, 2017: Free Will Statement*

On September 28, 2017, Plaintiff wrote and signed a Free Will Statement:

4

> I, Demond Campbell, D.I.N. 06A5607, do hereby state that I give the statement of my own free will and I have not been threatened or coerced to do so, nor have any promises of favors or leniency made been to me in any way. I also acknowledge that false statements are punishable as a Class A misdemeanor pursuant to Section 210.45 of the Penal Law of the State of New York. I further state I have read and understand the preceding text. My statement is as follows: I was pist off I Filed Inmate Grievance/filed Claim I got my cell search My Walkman/Headphone/Radio go damage during the search I Had permit for all three Items all I am asking is a replacement of these Items I will drop all aligation on the two C.O. Murphy/Trew do I was pist off that why I made these aligaiton.

(Free Will Stmt. (ECF No. 79-11).) Plaintiff signed and dated the bottom of the Free Will Statement, and Sergeant Hembdt signed as a witness. (*Id.*)

   i.   *Plaintiff's Account*

Plaintiff testified that Sergeant DePaolo was the only one in the room with him when he wrote and signed the Free Will Statement (Pl. Dep. Tr. at 76:22-25, 77:8-13), and that Sergeant DePaolo coerced him into writing and signing the Free Will Statement by telling Plaintiff that if he did not write it, he would send Plaintiff "to the box." (*Id.* at 76:17-21, 77:5-7.)

   ii.  *Defendants' Account*

Defendants produced evidence in the form of signed statements from both Sergeants Hembdt and DePaolo regarding Plaintiff's PREA allegations as well as the signing of his Free Will Statement. (Sgt. Hembdt Stmt. to Lt. Mead (ECF No. 79-7); Sgt. DePaolo Stmt. to Lt. Mead (ECF No. 79-10).) Sergeant Hembdt attests that on the morning of September 28, 2017, Plaintiff told him that C.O. Trew grabbed his private area when he was pat frisking him for a cell search and that C.O. Murphy had also been present and conducted the cell search. (Sgt. Hembdt Stmt. to Lt. Mead.) Sergeant Hembdt further attests that a C.O. escorted Plaintiff to the clinic. (*Id.*)

Sergeant DePaolo attests that on September 28, 2017, he was called to the clinic to assist with an alleged PREA complaint by Plaintiff. (Sgt. DePaolo Stmt. to Lt. Mead.) He further attests that when he interviewed Plaintiff about his PREA allegations against Defendants,

Plaintiff said that Defendants "conducted a pat frisk in an unappropriated manner and threatened to rape him," however, later in the interview, Plaintiff "was very animated and constantly kept talking about his confiscated Walkman and headphones." (*Id.*) Sergeant DePaolo further attests that, after asking Plaintiff whether his allegations were fueled by, or fabricated due to him being upset about his confiscated items, Plaintiff answered "yes I was mad at Officers Murphy and Tr[u]w." (*Id.*) Sergeant DePaolo further attests that Plaintiff said he wanted to rescind the serious accusations he made against Defendants and that he was "just mad at the time." (*Id.*) Sergeant DePaolo attests that he gave Plaintiff a Free Will Statement form and Plaintiff rescinded his PREA allegations against Defendants both verbally (to Sergeant DePaolo) and in writing (on the Free Will Statement). (*Id.*) Sergeant DePaolo asserts that Plaintiff was not coerced to withdraw his allegations. (*Id.*) Sergeant Hembdt asserts that he witnessed and also signed Plaintiff's Free Will Statement. (Sgt. Hembdt Stmt.to Lt. Mead.)

D.  *Additional Background*

On the same day Plaintiff wrote and signed the Free Will Statement, September 28, 2017, Plaintiff also wrote a letter to Governor Andrew Cuomo asking for help regarding his damaged property (the Walkman, headphones, and radio) from the September 14, 2017 cell search and the alleged sexual assault on September 22, 2017.[6] (Pl.'s Letters to Gov. Cuomo at 2 (ECF No. 79-12).)

---

[6] Plaintiff's September 28, 2017 letter to Governor Cuomo complains of the same set of events that occurred during the alleged September 22, 2017 sexual assault, however, Plaintiff says it was C.O. Moore—not Trew—who touched and grabbed his "private parts." (Pl.'s Letters to Gov. Cuomo at 2.) The letter further states that C.O. Moore told him he was "going to rape" Plaintiff if he did not drop the grievance. (*Id.*) When asked at the deposition if Plaintiff knew who C.O. Moore was, Plaintiff first responded that he did not know who C.O. Moore was (Pl. Dep. Tr. at 70:16-18) and later responded that he did know C.O. Moore, and that C.O. Moore would come to check on Plaintiff to see if he was upset about the alleged sexual assault and harassment (*Id.* at 73:14-25, 74:2-23).

On October 22, 2017, Plaintiff wrote another letter to Governor Cuomo complaining about the confiscation of his Walkman, radio, and headphones and asked for those items to be replaced, and did not mention the alleged sexual assault. (*Id.*) Plaintiff also asked for help with preventing retaliation against him and requested a transfer to a different correctional facility. (*Id.*)

Plaintiff ultimately received a transfer out of Woodburne Correctional Facility in June 2018. (Pl. Dep. Tr. at 9:6-7, 62:2-12, 64:9-15.)

II. **Procedural History**

Plaintiff commenced this action on or about May 10, 2018, asserting Section 1983 claims premised on violations of the Fourth and Eighth Amendments, and seeking damages in the amount of $2,000,000. (Compl. at 1, 6, 8.) The Complaint was originally filed in the Northern District of New York but was transferred to the Southern District of New York on or about June 19, 2018. (ECF No. 8, 9.) Following discovery, Defendants moved for summary judgment. (ECF Nos. 75-78.) Defendants informed the Court that Plaintiff did not oppose or reply to Defendants' motion for summary judgment. (ECF No. 81.)

**LEGAL STANDARDS**

I. **Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. of Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, inclusive of deposition testimony, documents, affidavits, and declarations, *id.* at 56(c)(1)(A)), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may support an assertion that there is no

7

genuine dispute of a particular fact by "showing ... that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus then shifts to the nonmoving party to raise the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Courts must "draw all rational inferences in the non-movant's favor," while reviewing the record. *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (citing *Anderson*, 477 U.S. at 248). Importantly, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness's credibility. *Anderson*, 477 U.S. at 249; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (noting that "[a]ssessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment"). Rather, in answering the primary inquiry of "whether there is the need for a trial," the court must determine "whether a fair-minded jury *could* return a verdict for the plaintiff [or non-moving party] on the evidence presented." *Anderson*, 477 U.S. at 250, 252. Summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

"[I]f a non-moving party fails to oppose a summary judgment motion, then 'summary judgment, *if appropriate*, shall be entered against' him," *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (emphasis added) (quoting Fed. R. Civ. P. 56(e)); however, "the failure to oppose a motion for summary judgment alone does not justify the [automatic] granting of summary judgment." *Id*. Even if the motion is unopposed, the

moving party must nonetheless "show[ ] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248. Accordingly, "the district court must still assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law." *Vermont Teddy Bear Co., Inc.*, 373 F.3d at 244. Further, "in determining whether the moving party has met th[is] burden…the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion." *Id.*. A *pro se* litigant's "bald assertion, completely unsupported by evidence is not sufficient to overcome a motion for summary judgment." *Johnson v. City of New York*, No. 15cv403, 2016 WL 7335663, at *2 (S.D.N.Y. Dec. 16, 2016) (internal quotation marks and citations omitted). Additionally,

> in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether 'the jury could reasonably find for the plaintiff,' and thus whether there are any 'genuine issues of material fact, without making some assessment of the plaintiff's account. Under these circumstances, the moving party still must meet the difficult burden of demonstrating that there is no evidence in the record upon which a reasonable factfinder could base a verdict in the plaintiff's favor.

*Jeffreys*, 426 F.3d at 554 (quoting *Anderson*, 477 U.S. at 252); *but see Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 245-46 (2d Cir. 2020) (holding that the Second Circuit's rule from *Jeffreys* is extremely narrow and only applies to the rare situations where "a witness's testimony is so problematic that no reasonable juror could credit it") (citations omitted).

When a court considers a motion for summary judgment against a *pro se* litigant, "special solicitude" should be afforded to the *pro se* litigant, *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988), and a court should construe "the submissions of a *pro se* litigant…liberally,"

9

interpreting them "to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted).

**II.     Section 1983**

Section 1983 provides, in relevant part, that, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004).

To state a claim under Section 1983, a plaintiff must allege "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, 2013 WL 1803896, at *2 (S.D.N.Y. April 25, 2013); *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).

**DISCUSSION**

Plaintiff alleges that Defendants violated his rights under the Fourth and Eighth Amendments when they sexually assaulted him. (Compl. at 6.) Defendants argue that summary judgment should be granted in their favor because Plaintiff relies exclusively on his own statements and testimony, which are so self-contradictory as to multiple facts and issues that no reasonable juror could credit Plaintiff's testimony. Specifically, Defendants note the following contradictions and inconsistencies (1) the date of the alleged incident; (2) which officer allegedly

10

touched Plaintiff's genitals; (3) the content of the alleged threat made to Plaintiff at the time of the alleged incident (including whether the word "rape" was used); (4) when or whether a pat frisk occurred; (5) the date on which Plaintiff reported the incident; and (6) who was in the room with Plaintiff when he wrote and signed the Free Will Statement. (Defs' Mem. at 10-11.)

For the reasons that follow, the Court DENIES Defendants' motion for summary judgment.

**I.     Eighth Amendment**

Plaintiff alleges that C.O. Trew sexually assaulted him while C.O. Murphy idly stood by and did not stop it, thereby violating his Eighth Amendment rights. (Compl. at 4-5.) Defendants dispute that any physical contact occurred. This is a dispute of material fact that precludes summary judgment.

*A.     Legal Standard for Sexual Assault Claims Under the Eighth Amendment*

"The Eighth Amendment protects prisoners from cruel and unusual punishment by prison officials." *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015) (citations omitted). Sexual abuse "by a corrections officer can give rise to an Eighth Amendment claim," and is violative of the Constitution when the alleged conduct "serves no penological purpose *and* is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate." *Id*. at 257 (emphasis added). Even a "single incident of sexual abuse, if sufficiently severe or serious, may violate" the inmate's rights. *Id*.  To violate the Eighth Amendment, all that is necessary is that the corrections officer's "contact with an inmate's genitalia or other intimate area" was intentional, "serve[d] no penological purpose," and was done with the goal of arousing the officer or humiliating the inmate—"penetration, *physical injury*, or direct contact with uncovered genitalia" are *not*

*required* for the contact to be deemed sufficiently serious.[7] *Id*. (emphasis added). "The Eighth Amendment is offended by conduct that is 'repugnant to the conscience of mankind.'" *Id*. at 256 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9-10). "Actions are repugnant to the conscience of mankind if they are 'incompatible with evolving standards of decency' or involve 'the unnecessary and wanton infliction of pain.'" *Id*. at 257-58 (quoting *Hudson*, 503 U.S. at 10 (deeming the grabbing and touching of an inmate's penis, coupled with the rubbing of the inmate's thigh to be "unquestionably repugnant to the conscience of mankind" (internal quotation marks and citations omitted))). Further, "if contact between an officer and an inmate's genitalia was initially justified," but the officer finds no contraband, then any "continued sexual contact" between the officer and the inmate may violate the inmate's Eighth Amendment rights. *Id*.

"[C]ourts considering a prisoner's [Eighth Amendment] claim must ask both if the officials act[ed] with a sufficiently culpable state of mind and if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Shepherd v. Fisher*, No. 08-CV-9297 (RA), 2017 WL 666213, at *17 (S.D.N.Y. Feb. 16, 2017) (quoting *McMillian*, 503 U.S. at 1, 8) (internal quotation marks omitted). First, "[a]s to the subjective prong, 'where no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct, the [sexual] abuse itself may, in some circumstances, be sufficient evidence of a culpable state of mind.'" *Id*. (quoting *Crawford*, 796 F.3d at 257 n.4). Second, the objective

---

[7] The Second Circuit's holding in *Crawford* that physical injury is *not required* for a successful Eighth Amendment sexual assault claim, 796 F.3d at 257, precludes Defendants' argument that summary judgment should be granted in their favor because the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(e) prisoner claims for emotional and mental injury to have attendant physical injuries and there is no dispute that Plaintiff did not suffer any physical injury. (Defs' Mem. at 9, 12-14.)

12

inquiry is "context specific, turning upon contemporary standards of decency." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir.2013) (quoting *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999)); *see also Shepherd*, 2017 WL 666213 at *17 (noting that "the Eighth Amendment is contextual and 'depends upon the claim at issue' because 'the Eighth Amendment's prohibition of cruel and unusual punishments draw[s] its meaning from the evolving standards of decency that mark the progress of a maturing society'" (quoting *McMillian*, 503 U.S. at 8)).

B.     *Disputes of Material Fact Preclude Summary Judgment*

Defendants argue that Plaintiff's failure to oppose coupled with significant inconsistencies in his written statements and testimony place this case in the rare circumstance where the narrow exception from *Jeffreys* applies because no reasonable jury could credit his version of events. (Defs' Mem. at 10-11.) The Court disagrees.

While Plaintiff does rely almost exclusively on his own testimony, the Court finds that his statements regarding whether the alleged assault occurred are not so rife with inconsistency that the *Jeffreys* exception applies. The Second Circuit and other courts in this District have held that in order for a case to fall within the boundaries where a court may apply the *Jeffreys* exception, the inconsistencies and contradictions must revolve around the material issue(s) or fact(s) of the case—the inconsistencies and contradictions must be more than minor. *See Matheson v. Kitchen*, 515 F. App'x 21, 24 (2d Cir. 2013) (holding that a district court may not rely on minor inconsistencies, such as differently worded responses at different times, to reject or disregard a testimony through summary judgment); *see also Gutierrez v. New York*, 18-CV-3621(MKB), 2021 WL 681238, at *4-5 (E.D.N.Y. Feb. 22, 2021) (holding that minor inconsistencies, such as where an incident occurred, "are not fatal to [a] [p]laintiff's credibility").

13

The inconsistencies and contradictions that Defendants highlight—including whether the incident occurred on September 22 or 23, 2017; when Plaintiff reported the alleged sexual assault; and which officer assaulted him—are *minor*, as none go to the essential material fact: whether Plaintiff was sexually assaulted by a C.O. while in custody at Woodburne Correctional Facility. *See Rickett v. Orsino*, No. 10 Civ. 5152 (CS)(PED), 2013 WL 1176059, at *14-15 (N.D.N.Y. Mar. 28, 2013) (holding that inconsistencies or differing statements as to "dates, times, triggering events, and the extent of the resulting injuries" are not sufficient to place a case in the rare circumstance where the *Jeffreys* exception may apply if the nonmovant has a "plausible explanation," and further holding that *forgetting* details as to an incident which occurred years prior suffices as a plausible explanation). "While some of the inconsistencies identified by [Defendants]…might well lead a jury to reject the credibility of [Plaintiff's]…testimony, they do not place this case among the 'extraordinary cases, where the facts alleged are so contradictory that doubt is cast upon their plausibility.'" *Matheson*, 515 F. App'x. at 24 (quoting *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 106 (2d Cir. 2011)).

Instead, the Court finds that it is plausible that a jury could credit Plaintiff's account. Plaintiff consistently stated to medical personnel, in grievances, in his Complaint, and in his deposition testimony that he was sexually assaulted on or about September 22 or 23, 2017. Further, Defendants similarly rely on their own statements and those of other interested C.O.'s and DOCCS employees to dispute Plaintiff's account. While the Free Will Statement Plaintiff signed may call into question whether the alleged assault occurred, it does not explicitly state that no assault occurred, it merely withdraws Plaintiff's allegations and, moreover, Plaintiff avers that he was coerced and threatened into signing it. *See Frost*, 980 F.3d at 250-51 (holding that

"the district court erred in discrediting…[a] declaration at the summary judgment stage," as the issue of whether or not coercion occurred is a "triable issue" to be left to the jury, and is not to be resolved at summary judgment). Whether the alleged assault occurred and whether the Free Will Statement was made knowingly, intelligently and voluntarily are disputes of material fact resolution of which requires assessing and weighing the credibility of the statements of those involved. Determination of which party's version of the events to believe is squarely the province of the jury. Accordingly, the Court rejects Defendants' contention that this matter must be dismissed as a matter of law.

## II. Fourth Amendment

While Defendants do not address it in their motion, the Complaint also invokes the Fourth Amendment. (Compl. at 6.) While "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of prison cell[s]," *Hudson v. Palmer*, 468 U.S. 517, 526 (1984), the Second Circuit has held that "inmates [do] retain a *limited* right to bodily privacy under the Fourth Amendment." *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016) (emphasis added). "[A]lthough the inmates' right to privacy must yield to the penal institution's need to maintain security, it does not vanish altogether." *Flood v. Cappelli*, No. 18-CV-3897 (KMK), 2019 WL 3778736 (S.D.N.Y. Aug. 12, 2019) (citations omitted). Under the Fourth Amendment, searches of prison inmates must be "reasonably related to legitimate security interests." *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 328 (2012) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Even when a search is justified by a legitimate penological interest, "it can become unreasonable where the search is conducted in an abusive manner or in the presence of unnecessary spectators*." Sankara v. Plaskett*, No. 15-cv-8470 (KBF), 2017 WL 4444250, at *3 (S.D.N.Y. Oct. 4, 2017) (citing *Bell v. Wolfish*, 441 U.S.

520, 560 (1979); *Harris*, 818 F.3d at 60, 62). A pat frisk, in particular, "can become unreasonable, and therefore violate the Fourth Amendment, based on the way in which it is conducted. *Webb v. Foreman*, No. 93 CIV. 8579 (JGK), 1996 WL 596515, at *4 (S.D.N.Y. Oct. 17, 1996) (citing *Watson v. Jones*, 980 F.2d 1165, 1165 (8th Cir. 1992)).

"Courts assessing an inmate's claim that officers infringed his or her right to bodily privacy must undertake a two-part inquiry: (1) First, the court must determine whether the inmate has 'exhibit[ed] an actual, subjective expectation of bodily privacy'; and (2) second, the court must determine whether the prison officials had sufficient justification to intrude on [the inmate's] fourth amendment rights." *Jones v. Quinones*, No. 19 Civ. 5524 (NSR), 2021 WL 1178092, at *4 (S.D.N.Y. Mar. 26, 2021) (quoting *Harris*, 818 F.3d at 57) (internal quotation marks omitted). Further, the Second Circuit has reiterated that,

> [i]f an inmate exhibits an actual, subjective expectation of bodily privacy, and if the inmate challenges an isolated search as infringing on his or her right of bodily privacy, courts should assess the claimed violation for reasonableness under the four *Bell* factors: (1) the scope of the intrusion; (2) the manner in which it was conducted; (3) the justification for initiating it; and (4) the place in which it was conducted.

*Harris*, 818 F.3d, at 58, 62-63 (citing *Bell*, 441 U.S. at 559)[8]; *see also Webb*, 1996 WL 596515, at *4 (holding that the reasonableness of a pat frisk "depends on the scope of the particular intrusion, the manner in which it is conducted the justification for initiating it, and the place it is

---

[8] While *Bell* and *Harris* involved strip searches, *Bell*, 441 U.S. at 559-60; *Harris*, 818 F.3d at 57-63, the Second Circuit suggested in *Harris* that the justification standard should be used for searches in general: "For courts to be able to assess the reasonableness of an intrusion on an inmate's constitutional rights, Supreme Court precedent suggests that officers must provide a justification that is supported by record evidence." *Harris*, 818 F.3d at 60 (noting that it was "difficult to assess the Appellees' justification for the search here because they provided no evidence controverting Harris's description of events; instead, they provided in their briefs a blanket denial that the search ever occurred and, in the alternative, a vague justification, assuming the search occurred as Harris describes").

16

conducted" (citing *Bell*, 441 U.S. at 520, 559 (1979) (internal quotation marks and citations omitted)).

Defendants failed to acknowledge Plaintiff's Fourth Amendment claim or seek summary judgment on it. However, the Court concludes that the dispute of material fact as to whether the sexual assault occurred, which precludes summary judgment on the Eighth Amendment Claim, also precludes summary judgment on the Fourth Amendment Claim. Accordingly, summary judgment on Plaintiff's Fourth Amendment claim would also be inappropriate at this juncture.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is DENIED in its entirety. Plaintiff's claims regarding violations of both the Eighth and Fourth Amendments remain.

The parties are directed to appear for a telephonic pre-trial conference on September 21, 2021 at 3:45 pm. To access the telephonic pre-trial conference, please follow these instructions: (1) Dial the meeting number: (877) 336-1839; (2) enter the Access Code: 1231334#; (3) press pound (#) to enter the conference as a guest. It is the Defendants' responsibility to coordinate with

the facility at which Plaintiff is housed to ensure that Plaintiff can appear at this telephonic conference.

The Clerk of the Court is respectfully requested to (1) correct the spelling of Defendant Trew's name in the caption; (2) terminate the motion at ECF No. 75; (3) mail a copy of this Opinion and Order to pro se Plaintiff at the address listed on ECF, and (4) show service on the docket.

Dated: July 30, 2021  
       White Plains, New York

SO ORDERED:

_____  
NELSON S. ROMÁN  
United States District Judge